# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CINDY LUTTREL, individually and on Behalf of the Estate of MICHAEL LUTTRELL, deceased, <br><br> v. <br><br> DOOSAN MACHINE TOOLS AMERICA CORPORATION, <br><br> **Serve at:**    **CSC-Lawyers Incorporating Service Co.** <br>                **221 Bolivar Street** <br>                **Jefferson City, MO 65101** <br><br> TECHMACHINERY, LLC dba TECHMACH aka TECHNICAL MACHINE, <br><br> **Serve at:**    **131 W. Kelley Drive** <br>                **Rogers, AR 72756** <br><br>        Defendants. | Case No.: 4:21-cv-960 <br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Cindy Luttrell, individually and on behalf of the Estate of Michael Luttrell, deceased, by and through her undersigned counsel, and as and for her Complaint for Damages against Defendants Doosan Machine Tools America Corporation and Techmachinery, LLC dba TechMach aka Technical Machine, states to the Court as follows:

### Parties, Jurisdiction and Venue

1. Cindy Luttrell, individually and on behalf of the Estate of Michael Luttrell, deceased ("***Plaintiff***"), is the widow of Michael Luttrell and the personal representative of the Estate of Michael Luttrell, deceased.[1]  Plaintiff is and was, at all times relevant hereto, an adult

---

[1] A true and accurate copy of the Letters of Administration issued in the matter styled *In the Estate of Michael J. Luttrell, Deceased* and bearing cause number 21AB-PR00131 currently pending in the Twentieth Judicial Circuit Court, Franklin County, State of Missouri is attached hereto as ***Exhibit 1*** and incorporated herein by reference.

**1**

residing in Franklin County, Missouri and she has the capacity to bring this suit on her own behalf and on behalf of the Estate of Michael Luttrell.

2.  Defendant Doosan Machine Tools America Corporation ("***Doosan***") is and was, at all times relevant hereto, a foreign corporation registered and in good standing in the State of Missouri, conducting business in the State of Missouri, with its principal place of business being in New Jersey, and which has the capacity to be sued.

3.  Doosan is a subsidiary of Doosan Corporation, a foreign corporation with its principal place of business located in South Korea.

4.  Defendant Techmachinery, LLC dba TechMach aka Technical Machine ("***TechMach***") is and was, at all times relevant hereto, a foreign limited liability created and existing under the laws of the State of Arkansas that is not registered with the State of Missouri, conducting business in the State of Missouri, and maintaining a presence in the State of Missouri through its team of service technicians based in the St. Louis metropolitan area, with its principal place of business located in Arkansas, and which has the capacity to be sued.

5.  Doosan and TechMach (hereinafter collectively, "***Defendants***"), designed, manufactured, marketed, distributed, serviced and/or sold the industrial machine and components that are the subject of this lawsuit.

6.  TechMach is an authorized distributor for Doosan products, including the industrial machine and components that are the subject of this lawsuit, and also provides service and support for said industrial machines beyond the initial purchase and setup such as service contracts and preventative maintenance contracts.

7. Upon information and belief, TechMach has one or more such contracts with Ace Manufacturing & Parts Company, Inc. ("*ACE*") and provided additional service and support to the industrial equipment which is the subject of this suit.

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that Plaintiff seeks damages in excess of $75,000.00, exclusive of interest and costs, and Defendants are each foreign corporations and thus not citizens of the State of Missouri.

9. Venue is proper under 28 U.S.C. § 1391(a)(2), in that a substantial part of the events and omissions giving rise to this claim occurred within this jurisdiction.

## General Allegations Common to All Counts

10. Doosan is a North American affiliate of Doosan Corp., a South Korean company formally known as Daewoo which, amongst other things, designs, manufactures, markets, distributes, services and sells computer numerical control machines, commonly referred to as CNC machines.

11. CNC machines date back to the 1940s when the first numeric control machines were built and are used in a manufacturing process in which pre-programmed computer software dictates the movement of factory tools and machinery and is commonly used to create precise and complex goods.

12. CNC machines are operated via numerical control wherein a software program, often referred to as G-code, has been written to control the machine such as the speed, coordination, and feed rate of raw goods.

13. One such CNC machine is the Doosan Puma V400 Vertical Turning Center, model number DS003 (the "*Machine*").

14. In essence, the machine spins raw materials, relevant to this case a 40+ pound disk of solid aluminum, at rates up to 3000 rpm while a precision tool within the Machine cuts the material to the desired design.

15. Doosan markets the Machine as being designed for long-term accuracy, heavy duty cutting and to minimize floor space with the "Highest Power and Machining Performance in its Class."[2]

16. Doosan also markets that the Machine has a double-paneled safety window so "[t]he operator safety can be enhanced through the front door with its shock absorbing laminated glass and double panel construction" and that the "windows without grating also provide a clear view of the machine inside."

17. Other safety features of the Machine Doosan and TechMach market include, but are not limited to:

    a. "[a]ll machine covers and protection systems are designed to resist to [sic] the risk of normal machine working limits";

    b. a door interlock switch which operates with a "separate actuating key which is fixed on the movable front door" and "is installed as one of the safety devices" to "ensure operator safety";

    c. emergency stop switches;

    d. "doors and covers" which are "properly dimensioned to give protection against mechanic transmission systems and working element systems";

    e. safety glass; and

    f. an electrical torque limiter.

---

[2] These representations can be found at *https://www.doosanmachinetools.com/en/product/series/D207_63/view.do*.

18. One such application in which the Machine would be used is for the production of automobile parts such as a flywheel.

19. In or about August of 2019 Michael Luttrell accepted a full-time position with ACE at its facility in Sullivan, Missouri as a programming machinist.

20. Mr. Luttrell was hired by ACE due to his extensive knowledge and expertise in writing G-code for CNC machines.

21. Amongst Mr. Luttrell's duties with ACE was to create the G-code for the Machine to manufacture a prototype flywheel made of solid aluminum (the "*Part*"), to set up the Machine for production of the Part, and to produce the Part.

22. ACE acquired the Machine from TechMach, an authorized distributor of Doosan, and thereafter used it nearly continuously during ACE's operational hours.

23. Upon information and belief, ACE only used the specified and standard parts recommended by Doosan on the Machine as replacement or consumable parts, if any, and the Machine maintained the as shipped specifications as a result thereof.

24. On April 1, 2020, Mr. Luttrell spent at least a portion of the day working on the software program for the Machine to manufacture the Part so that, once completed, the Part could be manufactured simply by selecting the correct program.

25. The following day, Mr. Luttrell was testing each line of the program for the Part and was operating the Machine at all times in a reasonably prudent manner and within the specifications provided for by Doosan.

26. On the third step, which called for a boring operation in the Machine while a 40+ pound aluminum disk was spinning at a high rate of speed, the boring bar contacted the aluminum disk and the part was ejected from the machine, through the heavy reinforced steel door, causing

both the door and the part to collide with Mr. Luttrell with great force causing severe blunt force trauma to Mr. Luttrell.

27. The aluminum disk then traveled through the crowded manufacturing floor and ultimately came to rest approximately 25 feet away leaving large gouges on the plant floor.

28. Upon information and belief, less than a minute after being struck two trained emergency medical technicians which were on site were with Mr. Luttrell administering aid.

29. Due to the severity of his injuries, Mr. Luttrell was ultimately air lifted to Barnes-Jewish Hospital in St. Louis, Missouri.

30. After several hours of agonizing pain, Mr. Luttrell succumbed to his severe injuries and died that same day.

31. Mr. Luttrell is survived by Plaintiff, his wife of nearly 25 years.

## COUNT I – Negligent Products Liability

COMES NOW Plaintiff, by and through her undersigned counsel, and as and for Count I for Products Liability directed to Defendants, states to the Court as follows:

32. Plaintiff hereby incorporates paragraph numbers 1 through 31 by reference as if fully set forth herein.

33. When Doosan manufactured the Machine, it knew or should have known that the Machine would be used to manufacture aluminum flywheels such as the Part.

34. When Doosan manufactured the Machine, it knew or should have known that in order to manufacture aluminum flywheels large aluminum disks would be spun within the machine at high rates of speed and that the machine would then use various tools to contact those spinning disks for cutting and boring.

35. Doosan and TechMach knew or should have known the extreme dangers that such contact could cause in the event the Machine was to eject the large aluminum disk.

36. Doosan and TechMach knew or should have known that the door design to the Machine was insufficient to stop the ejection of a large aluminum disk in the event of such occurrence.

37. Doosan transferred the Machine in the course of its ordinary business by and through its authorized distributors, including TechMach.

38. At the time Doosan transferred the Machine in the course of its ordinary business, the Machine was in a defective condition such that it was unreasonably dangerous when put to its reasonably anticipated use of making aluminum flywheels and/or at said time the Machine was unreasonably dangerous when put to said anticipated use and Doosan failed to warn operators of the Machine, including Mr. Luttrell, that the door was insufficient to stop a large aluminum disk from being ejected from the Machine.

39. TechMach, as the authorized distributor, transferred the Machine in the course of its ordinary business to ACE.

40. At the time TechMach transferred the Machine in the course of its ordinary business, the Machine was in a defective condition such that it was unreasonably dangerous when put to its reasonably anticipated use of making aluminum flywheels and/or at said time the Machine was unreasonably dangerous when put to said anticipated use and TechMach failed to warn operators of the Machine, including Mr. Luttrell, that the door was insufficient to stop a large aluminum disk from being ejected from the Machine.

41. At all relevant times, Mr. Luttrell used the Machine in the manner reasonably anticipated by both Doosan and TechMach to wit, to manufacture an aluminum flywheel.

42. At all relevant times, the dangers of the Machine were not known, nor could they be reasonably known, by operators thereof, including Mr. Luttrell, because said dangers were obscured by the marketing materials of Doosan and TechMach and by the presence of the heavy reinforced steel door along with the dual pane heavy reinforced window thereon.

43. Doosan failed to use ordinary care in the manufacture of the Machine to be reasonably safe and/or to adequately warn of the risk of harm from the Machine ejecting large aluminum disks through the heavy reinforced steel door causing sever blunt force trauma to the operator of the Machine or failed to provide its distributors, such as TechMach, with adequate training and instruction for conveying the risk of harm from the same.

44. TechMach failed to use ordinary care in the sale of the Machine to ACE to ensure the Machine was reasonably safe and/or to adequately warn of the risk of harm from the Machine ejecting large aluminum disks through the heavy reinforced steel door causing severe blunt force trauma to the operator of the Machine.

45. As a direct and proximate result of Defendants' failures, or any one of them, as set forth above, Plaintiff was harmed in that her husband, Mr. Luttrell, died when he was struck by one of those heavy aluminum disks after it had been ejected from the Machine and she has, amongst other things, incurred funeral or other burial services, lost his contributions to the household, incurred medical expenses which otherwise would not have been incurred, lost present and future wages of her husband, and other as of yet undetermined damages including but not limited to the pain and suffering of Mr. Luttrell prior to his death and the as of now not fully realized emotional and physical toll taken on Plaintiff by losing her husband in such a violent and tragic manner.

46. Upon information and belief, Doosan and TechMach were fully aware of and appreciated or should have been aware of and appreciated the likelihood the Machine could and would eject large aluminum disks placing the operators thereof, such as Mr. Luttrell, in high likelihood of suffering severe injury or death.

47. Upon information and belief, Doosan was aware or should have been aware of a minor alteration to the design and/or manufacture of the Machine at the time it was manufactured that would have minimized these known dangers but chose not to make said adjustment to the design to maximize its profits and to enrich itself to the detriment of the operators of the Machine.

48. Upon information and belief, Doosan and TechMach were aware of or should have been aware of the fact that the door to the Machine was insufficient to stop a large aluminum disk from being ejected from the machine but marketed the Machine as being safe from such hazards.

WHEREFORE, Plaintiff Cindy Luttrell, individually and on behalf of the Estate of Michael Luttrell, deceased, prays for judgment in her favor and against Defendants Doosan Machine Tools America Corporation and Techmachinery, LLC dba TechMach aka Technical Machine, jointly and severally, on Count I of this Complaint in an amount to proven at trial, but in no event less than $75,000.00, for pre- and post-judgment interest thereon until paid in full, for all of Plaintiff's costs, expenses and attorneys' fees incurred herein, and for such other and further relief as this Court deems just and proper.

### **COUNT II – Negligence**

COMES NOW Plaintiff, by and through her undersigned counsel, and as and for Count II for Negligence directed to Defendants, and brought in the alternative to Count I, states to the Court as follows:

49. Plaintiff hereby incorporates paragraph numbers 1 through 48 by reference as if fully set forth herein.

50. Doosan and TechMach knew or should have known that the Machine would be used to spin large aluminum disks at high rates of speed to create, amongst other things, flywheels.

51. Doosan and TechMach knew or should have known that the heavy reinforced steel door was insufficient to stop said heavy aluminum disks from being ejected from the Machine.

52. Doosan and TechMach knew or should have known that absent special knowledge obtained by either being the manufacturer thereof or by being an authorized distributor thereof, other could not ascertain that the Machine was defective and that the heavy reinforced steel door was insufficient to stop a heavy aluminum disks from being ejected from the Machine.

53. Doosan and TechMach knew or should have known the extreme danger that such an ejection caused to the operators of the Machine, such as Mr. Luttrell.

54. Having this special knowledge, which was not available to others including Mr. Luttrell, Doosan and TechMach had a reasonable duty to warn operators of the Machine, including Mr. Luttrell, of the dangers and likelihood of said failure of the door.

55. Doosan and TechMach each breached this duty by failing to inform ACE and/or Mr. Luttrell of these dangers which were not readily apparent and which a reasonable person would assume were not present due to the presence of the heavy reinforced steel door and the marketing materials distributed by both Doosan and TechMach.

56. It was foreseeable and reasonable by Doosan and TechMach that the Machine would be used in the manner which Mr. Luttrell used the Machine to create an aluminum flywheel.

57. As a direct and proximate result of the breaches of Doosan and TechMach, Mr. Luttrell was severely injured and later died when a 40+ pound aluminum disk was ejected from the Machine causing Mr. Luttrell to be struck by both the disk and the door.

58. As a direct and proximate result thereof, Plaintiff has been injured in that, amongst other things, she has, amongst other things, incurred funeral or other burial services, lost his contributions to the household, incurred medical expenses which otherwise would not have been incurred, lost present and future wages of her husband, and other as of yet undetermined damages including but not limited to the pain and suffering of Mr. Luttrell prior to his death and the as of now not fully realized emotional and physical toll taken on Plaintiff by losing her husband in such a violent and tragic manner.

WHEREFORE, Plaintiff Cindy Luttrell, individually and on behalf of the Estate of Michael Luttrell, deceased, prays for judgment in her favor and against Defendants Doosan Machine Tools America Corporation and Techmachinery, LLC dba TechMach aka Technical Machine, jointly and severally, on Count II of this Complaint in an amount to proven at trial, but in no event less than $75,000.00, for pre- and post-judgment interest thereon until paid in full, for all of Plaintiff's costs, expenses and attorneys' fees incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT III – Wrongful Death

COMES NOW Plaintiff, by and through her undersigned counsel, and as and for Count III for Wrongful Death directed to Defendants, states to the Court as follows:

59. Plaintiff hereby incorporates paragraph numbers 1 through 58 by reference as if fully set forth herein.

60. As is set forth in more detail above, Doosan and TechMach each knew of or should have known of the defects in the Machine and knew or should have known of the high likelihood of large aluminum disks being ejected through the door of the Machine which could cause severe injuries or death to the operators thereof.

61. Despite this, Doosan and TechMach, or any one of them, failed to correct the defects with the Machine and/or failed to provide adequate warning of the dangers of the Machine, including but not limited discharging large aluminum disks through the heavy reinforced steel door during normal and reasonable operation of the Machine.

62. At all times relevant hereto, Mr. Luttrell was using the Machine as it was intended and/or in a reasonably anticipated manner and the dangers of the Machine were unknown and could not be discovered by reasonable inquiry due to the presence of the heavy reinforced steel door and the marketing materials of both Doosan and TechMach.

63. As a direct and proximate result of the aforementioned failures of Doosan and TechMach and/or negligence, during the operation of the Machine to create the G-code for the Part, a 40+ pound aluminum disk was ejected through the heavy reinforced steel door of the Machine striking Mr. Luttrell causing severe pain, suffering and ultimately his death after several agonizing hours.

64. As a direct and proximate result of the failures of Doosan and TechMach and/or negligence, Plaintiff has been injured in that, amongst other things, she has incurred funeral or other burial services, lost his contributions to the household, incurred medical expenses which otherwise would not have been incurred, lost present and future wages of her husband, and other as of yet undetermined damages including but not limited to the pain and suffering of Mr. Luttrell

prior to his death and the as of now not fully realized emotional and physical toll taken on Plaintiff by losing her husband in such a violent and tragic manner.

WHEREFORE, Plaintiff Cindy Luttrell, individually and on behalf of the Estate of Michael Luttrell, deceased, prays for judgment in her favor and against Defendants Doosan Machine Tools America Corporation and Techmachinery, LLC dba TechMach aka Technical Machine, jointly and severally, on Count III of this Complaint in an amount to proven at trial, but in no event less than $75,000.00, for pre- and post-judgment interest thereon until paid in full, for all of Plaintiff's costs, expenses and attorneys' fees incurred herein, and for such other and further relief as this Court deems just and proper.

### **COUNT IV – Loss of Consortium**

COMES NOW Plaintiff, Cindy Luttrell, individually only, by and through her undersigned counsel, and as and for Count IV for Loss of Consortium directed to Defendants, states to the Court as follows:

65.  Ms. Luttrell hereby incorporates paragraph numbers 1 through 64 by reference as if fully set forth herein.

66.  As is set forth in more detail above, Doosan and TechMach each knew of or should have known of the defects in the Machine and knew or should have known of the high likelihood of large aluminum disks being ejected through the door of the Machine which could cause severe injuries or death to the operators thereof.

67.  Despite this, Doosan and TechMach, or any one of them, failed to correct the defects with the Machine and/or failed to provide adequate warning of the dangers of the Machine, including but not limited discharging large aluminum disks through the heavy reinforced steel door during normal and reasonable operation of the Machine.

68. These failures by Doosan and TechMach are the direct and proximate cause of the death of Mrs. Luttrell's husband of nearly 25 years, Michael Luttrell, on April 2, 2020.

69. As a direct and proximate cause of these failures, Mrs. Luttrell has lost, amongst other things, the support, material services, companionship, felicity, marital relations, conjugal fellowship, love, and affection with and of her husband, now deceased.

70. These losses have resulted in Mrs. Luttrell being injured in that, amongst other things, she has incurred funeral or other burial services, lost his contributions to the household, incurred medical expenses which otherwise would not have been incurred, lost present and future wages of her husband, and other as of yet undetermined damages including but not limited to the as of now not fully realized emotional and physical toll taken on Plaintiff by losing her husband in such a violent and tragic manner and by knowing of the pain and suffering of Mr. Luttrell prior to his death.

WHEREFORE, Plaintiff Cindy Luttrell, individually prays for judgment in her favor and against Defendants Doosan Machine Tools America Corporation and Techmachinery, LLC dba TechMach aka Technical Machine, jointly and severally, on Count IV of this Complaint in an amount to proven at trial, but in no event less than $75,000.00, for pre- and post-judgment interest thereon until paid in full, for all of Plaintiff's costs, expenses and attorneys' fees incurred herein, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

HEIN SCHNEIDER & BOND P.C.

*/s/ Jill R. Rembusch*
Jill R. Rembusch, #46251MO
2244 S. Brentwood Boulevard
St. Louis, Missouri 63144
(314) 863-9100
(314) 863-9101 (Fax)
jrr@hsbattorneys.com
*Attorney for Plaintiff*

**15**