UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CINDY LUTTRELL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-cv-00960-SEP |
| | ) |
| DN SOLUTIONS AMERICA CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Compel, Doc. [93]. The motion is fully briefed and ready for disposition. Docs. [94], [98], [104], [132]. For the reasons set forth below, the motion is granted in part.

#### FACTS AND BACKGROUND

On April 2, 2020, Michael Luttrell was killed while operating a Doosan PUMA V400 Vertical Turning Center ("Machine") at an Ace Manufacturing facility in Sullivan, Missouri. *See* Doc. [92] (Third Amended Complaint). "The Machine forms finished metal parts by spinning a workpiece at high speed and moving the boring bar, equipped with a cutting blade, into the spinning workpiece; the spinning workpiece is held by a chuck; the movement of the boring bar is controlled by programmed numeric controls; [and] the numeric controls are directed by a 'run' program inserted by the machine operator." *Id*. ¶ 35. While Mr. Luttrell was operating the Machine, the "workpiece [ ] suddenly ejected from the Machine and through the heavy reinforced steel door, causing both the door and the part to strike the Decedent in the chest with great force." *Id*. ¶¶ 49-50. Mr. Luttrell died from the injuries he sustained. *Id*. ¶ 55. Plaintiff, Mr. Luttrell's wife, sued DN Solutions Co., LTD ("DNS Korea"), DN Solutions America Corporation ("DNSA"), TechMachinery, LLC ("TechMach"), and Bob Brown Machines, Inc. ("Brown Machine"), alleging the "Machine was designed, manufactured, assembled, sold and/or distributed by Defendants" and seeking damages for Mr. Luttrell's death. *Id*. ¶¶ 58, 67, 76.

Plaintiff moves to compel DNSA to produce any "photographs, videos, testing reports and evaluation reports (i.e. the raw factual information and data) about the condition of the Machine obtained during DNSA's inspection on April 24, 2020." Doc. [94] at 8-9. DNSA

1

objects to Plaintiff's request asserting that the information Plaintiff seeks to compel is privileged work product prepared in anticipation of litigation. Doc. [98] at 2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) sets the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). There are two kinds of work product: ordinary work product, which includes "raw factual information," and opinion work product, which encompasses "counsel's mental impressions, conclusions, opinions or legal theories." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). "Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Id.* (citing Fed. R. Civ. P. 26(b)(3)). "In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Id.* When a litigant withholds information based on the work product doctrine, Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires the litigant to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

## DISCUSSION

DNSA argues that the materials Plaintiff requests are protected under the work product doctrine because DNSA "anticipated litigation at the time the materials sought by Plaintiff were prepared." Doc. [98] at 4. "The information supporting a claim that the work product doctrine protects material from disclosure is generally provided in a 'privilege log.'" *Nunnally v. Stillwater Ins. Co.*, 2019 WL 2009617, *5 (E.D. Mo. May 7, 2019). A privilege log "should provide sufficient factual information with respect to each item withheld for another litigant to assess the work product doctrine claim with respect to each item." *Id*. The privilege log DNSA

provided to Plaintiff is deficient.  It does not provide enough information for Plaintiff even to discern what items were withheld, much less to assess Defendant's work product claim with respect to each one of them.  *See* Doc. [94-1] at 1.  On the other hand, Plaintiff has met her burden of showing a substantial need for the requested materials and that the substantial equivalent of the information cannot be obtained through other means.

To begin with, the Court agrees with Plaintiff that the condition of the Machine shortly after the incident but before its repair is directly relevant to her claims, because it will "assist Plaintiff and her consultants in analyzing and proving the cause of [the] accident and the defectiveness of the Machine."  Doc. [94] at 9.  The parties' main disagreement pertains to whether the substantial equivalent of the information can be obtained through other means.

The inspection took place on April 24, 2020.  *See* Doc. [94] at 1; Doc. [98] at 1.  Neither Plaintiff nor counsel on her behalf was present for the inspection; in fact, Plaintiff maintains she was not represented by any counsel at the time of the inspection.  Doc. [94] at 9.  DNSA suggests that Plaintiff could have retained counsel and an expert at the time of the April 2020 inspection.  Doc. [98] at 11.  The Court does not find that persuasive.  Plaintiff's failure to obtain counsel and an expert within 22 days of her husband's death is a far cry from the situations the work product privilege is meant to prevent.  *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) ("[T]he work-product doctrine is designed . . . to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.").  The Court is also unpersuaded by DNSA's suggestion that Plaintiff could conduct her own inspection by mounting the damaged door on the Machine.  Doc. [98] at 12.  The Machine was repaired shortly after the April 2020 inspection, so any inspection at this point would not provide Plaintiff with the substantial equivalent of the information obtained at the April 2020 inspection of the damaged Machine.

Because Plaintiff cannot conduct her own inspection, she has sought to obtain information related to the inspection through other means.  Plaintiff submitted a Freedom of Information Act Request to the Occupational Safety & Health Administration and received a 106-page redacted file with four photographs but no videos.[1]  Doc. [132] at 6.  Ace Manufacturing produced "366 pages of records, plus a DAT file with the CNC programming

---

[1] According to Plaintiff, Ms. Barnes of OSHA indicated that the same documents would be produced by OSHA in response to a subpoena.  Doc. [132] at 6 n.4.

3

code input by Decedent into the Machine, and a video when the incident occurred." *Id*. Ace did not produce any videos from the inspection. *Id*. TechMach produced 420 photographs of the Machine including those taken at the inspection as well as a folder labeled "Ace Backup Downloaded Machine Data" that contained raw data and files downloaded from the Machine on April 24, 2020. *Id*. at 6-7. TechMach indicated that it did not have any videos of the Machine or any "Documents, Communications and Electric Media relating to any testing done on the Machine including at the inspection at Ace on April 24, 2020." *Id*.

Despite her efforts, Plaintiff has not obtained any video of the live stream inspection or the results of the non-destructive inspection and scanning of the Machine conducted by DNSA's consulting experts at the inspection. *Id*. at 5. Plaintiff believes that information to be in the hands of DNSA based on a letter sent by DNSA's counsel regarding the April 2020 inspection. *Id*. The letter states, in relevant part:

> This will confirm that the inspection of the Doosan Puma V400 Vertical Turning Center, Serial No. PV400551 ("subject turning center") will proceed on Friday, April 24, 2020, at 9 A.M. at Ace Manufacturing & Part Company, located at 300 Ramsey Dr., Sullivan, MO 63080.
>
> In attendance on behalf of Doosan Machine Tools America Corp. ("DMTA") will be our consulting experts from Engineering Systems, Inc. ("ESI"). Because of the current stay at-home orders in place in New York and New Jersey, counsel on behalf of DMTA as well as a representative from DMTA, will not be able to attend in person. Instead, our consulting experts will have a camera to live stream the inspection for us.
>
> As part of the inspection process, our consulting experts will be conducting a non-destructive inspection of and scanning the subject turning center, including its controllers and computers, all component parts, such as the chuck, jaws and workholdings, all tools and inserts in the subject turning center at the time of the accident, the work piece and the work area.

Doc. [132-3] at 1.

Based on DNSA's deficient privilege log, the Court has no way of knowing what information DNSA or its consultants obtained during the April 2020 inspection. To the extent such information exists, the Court finds that Plaintiff has shown a substantial need for the materials and that the substantial equivalent of the information cannot be obtained through other means. As such, DNSA must provide Plaintiff with an updated privilege log that provides enough information about each item obtained during the inspection on April 24, 2020, for Plaintiff to discern whether it is duplicative of something already in her possession. The parties should then meet and confer to discuss each item. Without disclosing anything containing the

4

mental impressions, conclusions, opinions, or legal theories of DNSA's attorney or other representative concerning the litigation, DNSA must produce any item obtained during the inspection that is not already in Plaintiff's possession.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel, Doc. [93], is **GRANTED** in part. The parties will comply with the Court's instructions as set forth in this Order.

Dated this 20th day of November, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE